**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

E.R., BY AND THROUGH HER MOTHER, B.R.,

    Plaintiff,

v.

CABRINI HIGH SCHOOL, INC.,

    Defendant.

Case No. 2:20-cv-03112
Jury Demanded

# COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

## PRELIMINARY STATEMENT

1. Several decades have passed since the first federal laws banning discrimination on the basis of disability. Yet disability-based discrimination remains all too common. This case is one example.

2. Plaintiff is a thirteen-year girl with cerebral palsy who uses a wheelchair, and the Defendant is an all-girls Catholic school to which Plaintiff was considering applying for admission. At her current school, Plaintiff has an aide (paid for by Plaintiff's family) who accompanies Plaintiff and assists her in daily activities, including using the bathroom. Plaintiff's mother requested that the Defendant grant the same reasonable accommodation. After stonewalling her request for months, the Defendant categorically denied the accommodation, without providing any reason for its denial or offering any alternative accommodations.

3. This is a civil action for declaratory relief, injunctive relief, monetary damages, and punitive damages under the Rehabilitation Act, as amended, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, to redress intentional discrimination on the basis of disability. Plaintiff also asserts state-law claims under La. Rev. Stat. §§ 46:1953, 51:2247, and La. Const. art. I, § 12.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 794, 42 U.S.C. § 12182, and 28 U.S.C. § 1367(a).

5. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

6. Plaintiff, a minor child, is a person with a disability and a resident of Louisiana.

7. Plaintiff has multiple "disabilities," as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102, the Rehabilitation Act, 29 U.S.C. § 705(20), and Louisiana state law, La. Rev. Stat. §§ 46:1952(2), 51:2232(3)(a).

8. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and La Rev. Stat. § 46:1956(C), a person "subjected to discrimination on the basis of disability" under 42 U.S.C. § 12188(a)(1), and a "person deeming h[er]self injured" under La. Rev. Stat. § 51:2264.

9. Defendant is a New Orleans high school located at 1400 Moss St., New Orleans Louisiana 70119, doing business as "Cabrini High School."

10. On April 13, 2020, Defendant received a "Paycheck Protection Program" (PPP) loan from the Small Business Administration in the amount of $350,000 to $1,000,000. As such, Defendant is a recipient of federal funds under 29 U.S.C. § 794(a).

11. This PPP loan has not yet been paid back in full.

## FACTUAL ALLEGATIONS

12. Plaintiff is a 13 year old girl residing in Jefferson Parish with her mother and her maternal grandparents.

13. Plaintiff is currently in the seventh grade and is currently applying for admission to Catholic high schools, which typically start at eighth grade.

14. Plaintiff was born premature via emergency C-Section, at 31 weeks. She spent the first six weeks of her life in a neonatal intensive care unit.

15. Due to her premature birth, Plaintiff has two conditions: spastic quadriplegic cerebral palsy (SQCP) and periventricular leukomalacia (PVL).

16. SQCP is a condition that causes the brain to send incorrect signals to the body, affecting muscle control, coordination, and voluntary movement.

17. PVL is a condition involving the death or damage and softening of the inner part of the brain that transmits information between the nerve cells and the spinal cord, as well as from one part of the brain to another.

18. Both SQCP and PVL are "disabilities," as defined by state and federal antidiscrimination laws, because they substantially limit major life activities, including (but not limited to) walking, talking, eating, dressing oneself, and using the bathroom.

19. Plaintiff also suffers from asthma.

20. Plaintiff primarily uses a wheelchair for mobility, though she can use a walker for very short periods of time.

21. Because of her SQCP, Plaintiff has limited coordination in her hands, making it extremely difficult to carry items while also pushing her wheelchair.

22. Before the Covid-19 pandemic, Plaintiff was enrolled in a New Orleans-area private school for several years, where she mostly excelled, including making the Honor Roll.

23. Plaintiff excels in language skills.  She recently won the French award at her school, given to the highest-performing student in French.  She was also one of only 15 children in her class accepted into a Latin program.  Since the Covid-19 pandemic, she has been teaching herself Swahili.

24. Since the beginning of the Covid-19 pandemic, Plaintiff has been unable to attend her previous school in person, because she lives with her grandparents, who are at high risk of complications from Covid-19.  Plaintiff herself is also at high risk, because she suffers from asthma.  As a result, Plaintiff has been enrolled in online home schooling, where she has excelled, earning high marks in all her classes.

25. At her previous school, Plaintiff was accompanied at school every day by an aide who helped her with daily activities, including navigating the busy hallways between classes, carrying her materials to and from classes, carrying her lunch tray, helping her cut her food, and assisting her in the bathroom.

26. The school did not pay the aide.  Rather, Plaintiff's family paid for the aide.  In addition, at the school's request, Plaintiff's family paid for a background check of the aide.

27. Plaintiff's aide typically did not remain in the classroom with Plaintiff. Instead, she would help Plaintiff get set up with her books and pencils and would then leave the classroom until each class was finished.

28. Plaintiff and her mother are both Catholic and both desire for Plaintiff to attend an all-girls Catholic high school, as her mother did.

29. On April 13, 2020, Cabrini received a loan from the Small Business Administration (SBA) through the congressionally-created "Paycheck Protection Program," also known as a "PPP loan."

30. Cabrini received a PPP loan of between $350,000 and $1,000,000.

31. Cabrini has not yet paid back the PPP loan in full.

32. Page 4 of the SBA application to receive a PPP loan states that "All businesses receiving SBA financial assistance must agree not to discriminate in any business practice … on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations."

33. SBA regulations prohibit loan recipients from "discriminat[ing] with regard to goods, services, or accommodations offered or provided by the aided business or other enterprise, whether or not operated for profit, because of race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron." 13 CFR § 113.3(a).

34. Cabrini's website contains the following note at the bottom of the homepage: "Cabrini High School does not discriminate on the basis of race, color, national, or ethnic origin

in the administration of its policies." Notably absent from this list is a commitment not to discriminate based on disability.

35. Seventh graders interested in attending Cabrini for the eighth grade must apply by December, 2020, approximately eight months before the school year begins.

36. In July, 2020, Plaintiff's mother called Cabrini and spoke with Jean Montgomery, Cabrini's Director of Admissions.

37. Plaintiff's mother explained that her daughter has cerebral palsy and uses a wheelchair. Montgomery assured Plaintiff's mother that Cabrini's facilities are wheelchair accessible.

38. Plaintiff's mother then informed Ms. Montgomery of her daughter's need for an aide. She explained to Ms. Montgomery the daily tasks that Plaintiff's aide assists Plaintiff with, including navigating the school, carrying her materials to and from classes, carrying her lunch tray, helping her cut her food, and assisting her in the bathroom. Plaintiff's mother also explained that she would pay for the aide.

39. In response, Ms. Montgomery said, "I don't know, we've never had a student with an aide before. I will have to check with the Principal to find out if we can allow that." Ms. Montgomery promised to call back after she had spoken with the Principal.

40. Approximately two weeks later, Ms. Montgomery called Plaintiff's mother and said, "I checked with the Principal, and the Principal says 'no, your daughter cannot have an aide.'"

41. Plaintiff's mother asked Ms. Montgomery "Why?"

6

42. Ms. Montgomery replied "I don't know why. She just said 'no.' I didn't think to ask her why."

43. Plaintiff's mother responded, "Well, I would like to know the reason why you cannot provide this accommodation."

44. Plaintiff's mother then explained to Ms. Montgomery, for the second time, the specific reasons her daughter needs an aide at school.

45. Plaintiff's mother reiterated that the school would not need to bear the burden of paying for the aide.

46. Plaintiff's mother further explained that, because of her SQCP, Plaintiff has limited coordination in her hands, it is particularly difficult for her to carry items while also pushing her wheelchair.

47. Plaintiff's mother further explained that, although her daughter is working hard to obtain the ability to use the bathroom independently, she is currently unable to do so.

48. Ms. Montgomery responded that being able to use the bathroom independently would make it more likely that Cabrini could accept Plaintiff as a student.

49. Plaintiff's mother responded by asking, "What if we apply in November and she still can't use the bathroom by then?" Ms. Montgomery demurred, explaining that she would need to speak with the Principal about it.

50. At the end of the conversation, Ms. Montgomery promised Plaintiff's mother that she would find out from the Principal the reason that Cabrini would not provide her requested accommodation and call back when she had an answer.

51. Despite this promise, Ms. Montgomery did not call back.

52. Plaintiff's mother called back at least five times and left messages, but Ms. Montgomery would not respond to or return Plaintiff's phone calls.

53. Plaintiff's mother finally took the initiative to contact the Principal herself.

54. Cabrini's Principal is Yvonne Hrapmann.

55. On the morning of Thursday October 15, 2020, Plaintiff's mother called Ms. Hrapmann and left a message, but Ms. Hrapmann did not return the phone call.

56. The following afternoon, on Friday October 16, 2020, Plaintiff's mother followed up with an email explaining that Ms. Montgomery was not returning her calls. Plaintiff's mother further requested that Ms. Hrapmann explain the reason why she had denied the requested accommodation.

57. Ms. Hrapmann finally called back on the morning of Monday October 19, 2020. Plaintiff's mother was not able to pick up. About thirty minutes later, Plaintiff's mother called back and spoke with Ms. Hrapmann.

58. Plaintiff's mother began the conversation by saying "Hi Ms. Hrapmann, this is [Plaintiff's mother]. We've been playing phone tag." Ms. Hrapmann replied, "OK, yeah, how can I help you?"

59. Plaintiff's mother then said,

> "I wanted to get some information. I had spoken several times with Jean Montgomery over the summer regarding my daughter. … We were interested in applying [to Cabrini]. I had explained to Jean that [my daughter] uses a wheelchair and for the last eight years at [her previous school] has had an aide with her. And it's my understanding that Jean spoke to you about that and that you said [my daughter] could not have an aide. And I had asked Jean why and she had no answer for me. And she was supposed to call me back, probably, in August, and I haven't heard back from her. And I've left five or six messages with no response. So, I apologize for having to call you. But I

just wanted an answer to my question, and I figured that since you were the one who said no, you would obviously have the answer.

60. In response, Ms. Hrapmman said "We don't allow aides or extra adult individuals in the classroom."

61. Plaintiff's mother then asked, "Why is that?"

62. Ms. Hrapmann then said "It's just a practice and a policy here at Cabrini."

63. Plaintiff's mother then said, "OK, I feel like it's a reasonable accommodation to ask for."

64. Plaintiff's mother then asked, "Did Ms. Montgomery explain to you the four things that the aide helps [my daughter] with?"

65. Ms. Hrapmann replied, "Um, she may have this summer, you know, I'd have to go back and look at, you know, conversations with her, have her refresh my mind.  She's usually very, very thorough.  Um, I can't recall…"

66. Plaintiff's mother then interjected to say "I'm just going to tell you really quick while we're on the phone."  She explained:

> So of course [my daughter] is coming from her [previous school] which [has a very large campus], so the aide pushed [my daughter's] wheelchair, because it's a little far for [her] to maneuver the wheelchair herself.  Which also came in very handy during class changes and stuff like that, instead of [my daughter] having to navigate through a crazy hall full of people, the aide could push her.  The aide also carried her books.  As you can imagine, it would be impossible to carry your books while pushing a wheelchair.  The aide also carried [her] lunch tray, which would be impossible for somebody in a wheelchair to push their own wheelchair and carry their lunch tray.  And the aide also assisted [my daughter] in the bathroom.

67. Plaintiff's mother then explained that her daughter's aide wouldn't actually need to stay "in the classroom." Rather, "the aide would just get [Plaintiff] set up in the classroom,

9

and she did not even remain in the classroom with [Plaintiff]. She would either go to the dining hall and get a coffee or go sit on a bench outside the classroom somewhere. … It's not like [Plaintiff] needs an aide with her 24/7. So I don't know if that changes your view on anything."

68. Ms. Hrapmann then said, "Um, let me, let me give you a call back. OK? I just have to go through a series of questions and responses [sic] with the facilities manager."

69. Cabrini does not list any person holding the title of "facilities manager" on its website.

70. A "facilities manager" is typically someone in charge of maintenance and/or janitorial services. It is not clear why Plaintiff's request would need to be approved by such a person.

71. After waiting over a week for Ms. Hrapmann to call back, Plaintiff realized that Cabrini had constructively denied her request, and she retained legal counsel.

72. Plaintiff and her mother have endured enormous hardship as a result of Cabrini's actions, which clearly communicated a callous disregard for Plaintiff's disability.

73. The Defendant, through its employees and administrative officials, intentionally discriminated against Plaintiff solely on the basis of her disability.

74. Plaintiff has suffered damages as a result of Defendant's conduct.

## FIRST CLAIM – Intentional Discrimination (Section 504)

75. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 of this Complaint as if fully set forth in this paragraph.

76. Defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it is a recipient of federal funds and discriminated against Plaintiff solely on the basis of

her disability, by treating her less favorably because of her disability and by failing to provide a reasonable accommodation for her disability.

77. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

78. Plaintiff suffered injuries as a result of Defendant's conduct.

### SECOND CLAIM – Intentional Discrimination (ADA)

79. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 of this Complaint as if fully set forth in this paragraph.

80. Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, because it is a public accommodation that discriminated against Plaintiff on the basis of her disability, by treating her less favorably because of her disability and by failing to provide a reasonable accommodation for her disability.

81. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

82. Plaintiff suffered injuries as a result of the Defendant's conduct.

### THIRD CLAIM – Intentional Discrimination (La. Rev. Stat. § 46:1953)

83. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 of this Complaint as if fully set forth in this paragraph.

84. Defendant violated La. Rev. Stat. § 46:1953 because it is an "educational institution" that denied a "person with a disability" the same rights "as a person who is able-bodied."

85. Defendant treated Plaintiff less favorably because of her disability and failed to provide a reasonable accommodation for her disability.

86. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

87. Plaintiff suffered injuries as a result of Defendant's conduct.

### FOURTH CLAIM – Intentional Discrimination (La. Rev. Stat. § 51:2247)

88. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 of this Complaint as if fully set forth in this paragraph.

89. Defendant violated La. Rev. Stat. § 51:2247 because it is a "public accommodation" that "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

90. Defendant treated Plaintiff less favorably because of her disability and failed to provide a reasonable accommodation for her disability.

91. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

92. Plaintiff suffered injuries as a result of Defendant's conduct.

### FIFTH CLAIM – Intentional Discrimination (Louisiana Constitution)

93. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 74 of this Complaint as if fully set forth in this paragraph.

94. Defendant violated article I, section 12 of the Constitution of the State of Louisiana of 1974, because it engaged in "unreasonable discrimination based on … [Plaintiff's] physical condition."

95. Defendant treated Plaintiff less favorably because of her disability and failed to provide a reasonable accommodation for her disability.

96. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

97. Plaintiff suffered injuries as a result of Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendant's conduct as set forth above violates 29 U.S.C. § 794; 42 U.S.C. § 12182; La. Rev. Stat. § 46:1953; La. Rev. Stat. § 51:2247; and La. Const. art. I, § 12.

2. Entering an injunction directing that Defendant and its officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendant, take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct alleged herein and to prevent similar occurrences in the future;

3. Awarding compensatory damages to Plaintiff for injuries caused by Defendant's discriminatory conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 51:2264, and any other applicable provisions.

4. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 51:2264, and any other applicable provisions;

5. Requiring that Defendant and its employees undergo remedial training on their obligations to people with disabilities under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Louisiana state laws; and

6. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.

    Respectfully submitted,

    November 16, 2020

    __/s/ *Chris Edmunds*_____

    Chris Edmunds, Counsel for Plaintiff
    LBSA: 37670
    Chris Edmunds Law Office
    4937 Hearst St., Suite 2F
    Metairie LA 70001
    (504) 314-0034
    chrisedmundslaw@gmail.com